Merlin WEBER, Barbara Weber, Ryan Weber, Robert Guetchidjian, Jane Guetchidjian and Robert A. Guetchidjian, on their own behalf and on behalf of all others similarly situated, Plaintiffs-Respondents-Cross Appellants,

v.

TOWN OF SAUKVILLE, Marvin O. Hoffman, Town Supervisor Albin E. Vand Boom, Town Supervisor and Paul H. Brunnquell, Town Supervisor, Defendants,

PAYNE & DOLAN, INC., Intervening Defendant-Appellant-Cross Respondent-Petitioner.

Supreme Court

*No. 94–2336. Oral argument December 3, 1996.—Decided April 29, 1997.*

(Also reported in 562 N.W.2d 412.)

For the intervening defendant-appellant-cross respondent-petitioner there were briefs by *William F. White, Kimberly Cash Tate* and *Michael, Best & Friedrich*, Madison and oral argument by *William F. White*.

For the plaintiffs-respondents-cross appellants there was a brief by *Alan Marcuvitz, Andrea Roschke* and *Weiss, Berzowski, Brady & Donahue*, Milwaukee and oral argument by *Alan Marcuvitz* and *Andrea Roschke*.

Amicus curiae brief was filed by *Richard A. Lehmann* and *Boardman, Suhr, Curry & Field*, Madison for the Transportation Development Assocation of Wisconsin.

Amicus curiae brief was filed by *Donald Leo Bach, Paul G. Kent, Todd Palmer* and *DeWitt, Ross & Stevens, S.C.*, Madison for the Wisconsin Road Builders Assocation, the National Stone Assocation, the Aggregate Producers of Wisconsin, the Assocation of General Contractors, Wisconsin Chapter, and Wisconsin Ready Mixed Concrete Assocation.

¶ 1. ANN WALSH BRADLEY, J. The defendant, Payne & Dolan, Inc. (Payne & Dolan), seeks review of a published decision of the court of appeals, which affirmed a circuit court summary judgment in favor of plaintiff residents (plaintiffs) of the Town of Saukville (the Town).[1] Payne & Dolan challenges the court of appeals' conclusion that the Town's zoning ordinance does not authorize a conditional use permit for blasting and crushing in a quarrying operation. The plaintiffs assert that the ordinance prohibits the quarrying operation because of the number of families residing within the area. Because we determine that blasting and crushing are part of the mineral extraction process, and that the ordinance does not prohibit

---

[1] *See Weber v. Town of Saukville*, 197 Wis. 2d 830, 541 N.W.2d 221 (Ct. App. 1995), affirming a judgment by the Circuit Court for Ozaukee County, Richard T. Becker, Judge.

the proposed quarrying activity, we conclude that the conditional use permit is authorized under the Town's zoning ordinance. However, even though the permit is authorized, we conclude that it is invalid because the Town failed to satisfy a zoning ordinance notice provision, and because the application for the permit was incomplete. Accordingly, we affirm the court of appeals' invalidation of the conditional use permit.

¶ 2. The following issues are presented on review: 1) whether the Town's zoning ordinance empowers the Town Board to issue a conditional use permit which authorizes blasting and crushing as part of a mineral extraction operation; 2) whether operation of the quarry is forbidden under the zoning ordinance proscription against mineral extraction operations where 30 or more families reside within one-half mile of the proposed site; 3) whether the Town complied with the notice requirements prescribed by the zoning ordinance; and 4) whether the conditional use application submitted by Payne & Dolan met the requirements of the zoning ordinance.

¶ 3. While our conclusion on the sufficiency of the application issue is dispositive in this case, we nevertheless consider the 30 families, blasting and crushing, and notice issues. These issues may recur in the event that Payne & Dolan reapplies for a conditional use permit. Moreover, because we disagree with the court of appeals' determination that blasting and crushing are not authorized under the Town's zoning ordinance, and because the issue will have statewide impact on mineral extraction operations, we address the question in order to make clear that the Town's ordinance does, in fact, authorize blasting and crushing as part of a quarrying operation.

219

## I. Facts and Procedural History

¶ 4. The relevant facts are undisputed. Payne & Dolan builds roads and bridges. The company requires a reliable source of aggregate, or crushed stone, for use in its business. Payne & Dolan supplies its need for aggregate with stone extracted from quarries it owns and operates.

¶ 5. In January 1992, Payne & Dolan submitted a conditional use application form to the Saukville Town Clerk. In its application, Payne & Dolan requested that it be allowed to use blasting and crushing as part of a limestone quarrying operation. At the time of its submission, the application omitted the following information: the quantity of water to be used in the operation, a topographic map showing the depth of proposed quarry excavations, and a restoration plan.

¶ 6. After receiving the application, the Town Clerk mailed and published notice that the matter would be addressed at a public hearing conducted by the Town's Plan Commission on Tuesday, February 11, 1992. Mailed notice was provided to those persons identified by the Clerk as "residents within one-half mile of the proposed quarry." It is undisputed that there were 36 property owners whose property lines were located within one-half mile of the proposed quarry site. Of this number, 27 resided in dwellings located within one-half mile of the site. Because the Town Clerk notified only "residents," nine owners of property located within one-half mile of the proposed quarry did not receive mailed notice of the public hearing. The Clerk also published notice in the official Town paper on Monday, January 27, 1992, and Thursday, January 30, 1992, unaware that the Town zoning ordinance required that such notice be published once per week for two consecutive weeks.

¶ 7. Both the published notice and the mailed notice erroneously stated that the public hearing would take place on Tuesday, February 10, 1992, at 8:00 p.m. The actual date of the meeting was Tuesday, February *11*, 1992. Realizing his mistake, the Clerk stayed at the Town Hall on Monday, February 10, 1992, from 7:00 p.m. until 8:30 p.m., in order to advise any misinformed attendees of the correct date. No one appeared.

¶ 8. Approximately 70 residents attended the public hearing the following evening, including all of the plaintiffs in this case. However, several of the property owners who did not receive the earlier mailed notice did not attend the public hearing. At the hearing, residents were allowed to make statements and ask questions of Payne & Dolan representatives. At the regular Plan Commission meeting immediately following the public hearing, action on the conditional use request was tabled until the next meeting. It is undisputed that the February 11, 1992 hearing was the only public hearing on the matter.

¶ 9. During the next nine months, the Town Board and Plan Commission convened meetings, several of which were attended by Town residents, to consider Payne & Dolan's application.[2] During that time, Town officials and residents toured Payne & Dolan's existing quarry operations in the City of Franklin, as well as the proposed quarry site in the Town. On November 12, 1992, the Plan Commission voted to recommend granting the conditional use permit. The Town Board voted unanimously to grant the permit on November 17, 1992.

---

[2] The majority of these meetings were related to the authorization, presentation, and discussion of an independent environmental impact study of the proposed quarry site.

¶ 10. On November 30, 1992, the plaintiffs commenced an action in the circuit court against the Town and its Supervisors.[3] The plaintiffs alleged that in granting the conditional use permit, the Town Supervisors failed to follow the provisions of the Town's zoning ordinance, thus violating their due process rights under the United States Constitution, pursuant to 42 U.S.C. § 1983. The defendants removed the case to the United States District Court for the Eastern District of Wisconsin. The district court granted the defendants' motion for summary judgment, dismissing the plaintiffs' federal law claims on the merits and with prejudice, and remanding to the circuit court for further consideration of the alleged zoning ordinance violations.

¶ 11. On remand to the Circuit Court for Ozaukee County, all parties moved for summary judgment. Granting the plaintiffs' motion for summary judgment, the circuit court invalidated the conditional use permit on the grounds that: 1) the Town's zoning ordinance does not authorize blasting and crushing as methods of mineral extraction; 2) the Town did not substantially comply with the notice provisions of the zoning ordinance; and 3) Payne & Dolan's application did not comply with the provisions of the zoning ordinance. The court also determined that the conditional use satisfied the zoning ordinance requirement that fewer than 30 families reside within one-half mile of the proposed mineral extraction site.[4]

---

[3] Payne & Dolan was not named as a defendant in the complaint, but later moved for and was granted party status as an intervening defendant.

[4] The circuit court also enjoined Payne & Dolan from acting pursuant to the authority granted by the conditional use permit.

¶ 12. Payne & Dolan appealed, and the plaintiffs cross appealed.[5] Affirming the decision of the circuit court, the court of appeals concluded that the Town's zoning ordinance does not authorize the issuance of a conditional use permit that allows blasting and crushing as part of a mineral extraction operation. *Weber v. Town of Saukville*, 197 Wis. 2d 830, 541 N.W.2d 221 (Ct. App. 1995). The court of appeals did not address the other issues raised by the parties. Payne & Dolan petitioned this court for review.

## II. Standard of Appellate Review

¶ 13. This court reviews a grant of summary judgment using the same methodology as the circuit court. *State ex rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 591–92, 547 N.W.2d 587 (1996). Where there are no material facts in dispute, as here, we must determine whether the movant is entitled to judgment as a matter of law. *Id.* at 592.

¶ 14. This case requires us to interpret provisions of the Town of Saukville, Wis., Zoning Ordinances (1984). Both parties and amici agree that the ordinance provisions relevant in this case are substantially similar to those in communities across the state, and that our interpretation may therefore have a statewide impact on mineral extraction operations. We have recently summarized the deference which appellate courts owe to a Town Board's interpretation of ordinance language having significance beyond the parties to a given action:

---

[5] The Town and its Supervisors did not appeal the decision of the circuit court. The plaintiffs appealed that part of the circuit court's decision holding that the proposed quarry did not violate the "30 families" rule.

> In the interpretation of ordinances, the rules of statutory interpretation apply. . . .The ordinance in question is substantially similar to. . .ordinances across the state, although the language of. . .the various ordinances may vary. Under these circumstances, we conclude that one board's interpretation of the language in a single case should not be viewed as controlling or persuasive and that we should interpret the term [in question] *de novo.*

*Marris v. City of Cedarburg*, 176 Wis. 2d 14, 32–33, 498 N.W.2d 842 (1993) (citations omitted). Thus, in this case we interpret the relevant Town ordinance terms without deference to the Town Board, circuit court, or court of appeals.[6]

¶ 15. Wisconsin law has long recognized that when a court construes an ordinance or statute, words must be given their common meaning. *State v. Martin*, 162 Wis. 2d 883, 904, 470 N.W.2d 900 (1991) (citations omitted). However, it is equally well established that technical words or phrases with a peculiar meaning in the law must be construed according to such meaning. *Id.*

---

[6] We acknowledge that some prior cases give greater deference to a municipality's interpretation of an ordinance provision. *See, e.g., State ex rel. B'nai B'rith Found. v. Walworth County Bd. of Adjustment*, 59 Wis. 2d 296, 304, 208 N.W.2d 113 (1973); *State ex rel. Beidler v. Williams Bay Zoning Bd. of Appeals*, 167 Wis. 2d 308, 311, 481 N.W.2d 669 (Ct. App. 1992). However, given that our interpretation of the zoning ordinance in question will likely have statewide impact on mineral extraction operations, we conclude that the *Marris de novo* standard of review is applicable in this case.

### III. Blasting and Crushing

¶ 16. We turn to the first issue in this case, which is whether the Town zoning ordinance authorizes blasting and crushing as part of a mineral extraction operation. The ordinance provides in relevant part:

MINERAL EXTRACTION OPERATIONS

Mineral extraction operations are conditional uses and may be permitted in accordance with the provisions in Sections 4.1 through 4.4 of this Ordinance, except as otherwise provided by this section. . . . *Use Restricted.* Mineral extraction operations shall include the removal of rock slate, gravel, sand, or any other minerals from earth by excavating, stripping or leveling.

Zoning Ordinance § 4.10.

¶ 17. The court of appeals approached the issue by inquiring "whether the terms 'excavating,' 'stripping' and 'leveling' include blasting and crushing." *Weber*, 197 Wis. 2d at 837. According to the court of appeals, the common meaning of the three terms, "excavating," "stripping," and "leveling," limit mineral deposit removal to extraction by mechanical means. *Id.* at 838. The court concluded that under the ordinance, blasting is not a permissible method of mineral extraction, because it involves explosives rather than machinery. *Id.* The ordinance also does not allow crushing, the court reasoned, because crushing "is a distinct manufacturing process," and "is not an inherent part of extraction; it takes place after the mineral is excavated." *Id.* at 839.

¶ 18. This court does not read § 4.10 so narrowly. We observe initially that conditional use standards often lack specificity, since their purpose is to "confer a degree of flexibility in the land use regulations."

*Edward Kraemer & Sons v. Sauk County Adjustment Bd.*, 183 Wis. 2d 1, 14, 515 N.W.2d 256 (1994); *see also State ex rel. Skelly Oil Co. v. Common Council, City of Delafield*, 58 Wis. 2d 695, 700–01, 207 N.W.2d 585 (1973) (noting that conditional uses are "flexibility devices").

> [I]f it were possible to find a legislative draftsman capable of performing such a task—of drafting standards to govern the likely as well as all possible contingencies relating to a conditional use—there would be no need to make the use a conditional one. In that case they could be made part of the zoning ordinance proper requiring no exercise of discretion on the part of anyone. . . . [I]f the purposes of zoning are to be accomplished, the master zoning restrictions or standards must be definite while the provisions pertaining to a conditional use. . .must of necessity be broad and permit an exercise of discretion.

3 Edward H. Ziegler, Jr., *Rathkopf's The Law of Zoning and Planning* § 41.11, at 49 (4th ed. 1996).

¶ 19. Turning to the ordinance provision at issue, the phrase "shall include" in § 4.10 denotes a non-exhaustive list of methods by which minerals may be removed from the earth. *See* Legislative Reference Bureau, *Wisconsin Bill Drafting Manual 1997–1998* § 2.01(1)(i) (revised August 1996) (" 'Means' is complete and 'includes' is partial. Using 'includes' allows a court or administering agency to adopt additional meanings . . ."). We find unpersuasive the plaintiffs' contention that "include" modifies the list of materials to be extracted, rather than the methods of extraction. The phrase "rock slate, gravel, sand or any other minerals from earth" is itself a non-exhaustive list. If we adopted the plaintiffs' view that the term "include" modifies

this list of extracted minerals, the phrase "or any other minerals" would be rendered surplusage, a result to be avoided wherever possible. *See Ann M.M. v. Rob S.*, 176 Wis. 2d 673, 680, 500 N.W.2d 649 (1993).

¶ 20. While the court of appeals correctly examined the permissible methods of mineral extraction, it erred in focusing solely on the terms "excavating, stripping or leveling." Those activities comprise only a partial list of permissible "mineral extraction operations." Instead, the inquiry centers on whether blasting and crushing also come within the definition of "mineral extraction operations."

¶ 21. We conclude that resort to the "technical" meaning of "mineral extraction operations" is appropriate in this case. The ordinance does not use this term in the general descriptive sense, but instead to define processes peculiar to the mining industry. The technical meaning should govern in a technical context. *See Lake City Corp. v. City of Mequon*, 207 Wis. 2d 156, 163 n.8, 558 N.W.2d 100 (1997); *Lang v. Lang*, 161 Wis. 2d 210, 221, 467 N.W.2d 772 (1991); *see also* Wis. Stat. § 990.01(1) (1995–96).[7] Because § 4.10 addresses mining, we interpret the ordinance provision with the aid of industry, administrative, and legislative definitions of mining activities.

¶ 22. Blasting is an indispensable activity in the extraction of hard rock from the earth. *See* National Stone Association, *The Aggregate Handbook*, 5–16 (1991) ("Every hard rock quarrying operation extracts stone from its geologic formation by the controlled use of explosives and/or blasting agents"). The same reference manual states the following about "extraction":

---

[7] Unless otherwise indicated, all future statutory references are to the 1995–96 volume.

> The term extraction. . .includes the planning and design for removal of rock, sand, and gravel from the ground. The term extraction also includes the actual removal or mining process, and the reclamation of the land after mining is complete. Each different method employed for extraction is unique and contains numerous interrelated components. A simplified description of the extraction process consists of the removal of rock, sand, or gravel from its natural state and delivery of this material to the primary crushing or sizing facility in optimum physical dimensions for continued processing.

*Id.* at 7–2. Although focusing on excavation of metals, the United States Department of the Interior's *Dictionary of Mining, Mineral, and Related Terms* (1968) provides that "extraction" is:

> [u]sed in relation to all processes that are used in obtaining metals from their ores. Broadly, these processes involve the breaking down of the ore both mechanically (crushing) and chemically (decomposition).

*Id.* at 404. These technical definitions support the conclusion that within the industry, blasting and crushing are considered an integral part of mineral extraction operations.

¶ 23. In addition, the Wisconsin Department of Natural Resources has recognized that blasting and crushing are activities inherent in quarrying operations. *See* Memorandum from George E. Meyer, Secretary, Wisconsin Department of Natural Resources, to the Natural Resources Board 1 (Jan. 24, 1995) (on file with the Department of Natural Resources) (stating that most of 1,903 nonmetallic mines identified in Wisconsin "entail *crushing*, washing, sorting or *blasting*") (emphasis added).

Our legislature has also determined that crushing is an activity which comes within the meaning of "nonmetallic mining":

> "Nonmetallic mining" means all of the following:
>
> . . . .
>
> (b) On-site processes that are related to the extraction of mineral aggregates or nonmetallic minerals, such as stockpiling of materials, blending mineral aggregates or nonmetallic minerals with other mineral aggregates or nonmetallic minerals, *crushing*, screening, scalping and dewatering.

Wis. Stat. § 295.11(3)(b) (emphasis added).

¶ 24. "Nonmetallic mining," if not synonymous with "mineral extraction operations," is certainly included within those operations. Because mineral extraction activities include nonmetallic mining, and nonmetallic mining includes crushing of stone, it follows that mineral extraction operations include the crushing of stone. We therefore conclude that blasting and crushing are authorized as part of a mineral extraction operation under § 4.10 of the Town's zoning ordinance.

## IV. The 30 Families Rule

¶ 25. Having determined that § 4.10 authorizes blasting and crushing as part of a quarrying operation, we next consider whether the Town's grant of the conditional use permit violated the zoning ordinance's "30 families" rule. Section 4.10 provides that " [n]o mineral extraction operation shall be permitted if 30 or more families reside within a half mile of the proposed site." Payne & Dolan asserts that this provision requires a

count of dwellings located within one-half mile of a proposed mineral extraction site. In this case, 27 such dwellings exist.[8] The plaintiffs contend that the provision requires a count of all parcels of land with property lines falling within one-half mile of a proposed site. Thirty-six such parcels exist. Thus, the proposed quarry would be allowed under Payne & Dolan's counting method, but would be barred under the plaintiffs'.

¶ 26. We agree with the trial court's conclusion that fewer than 30 families reside within one-half mile of the proposed quarry. Our determination is based upon the definition of "family" provided in § 11.3 of the zoning ordinance, and upon other language contained in § 4.10.

¶ 27. The critical language in the 30 families rule is "families reside." A "family" is defined in the ordinance as: "[p]ersons related by blood, adoption or marriage or not to exceed three persons not so related, living in one dwelling as a family unit." Zoning Ordinance § 11.3. It appears from this language that the ordinance views families as residing in dwellings, rather than on the entirety of the parcels of real estate on which their dwellings are built.

¶ 28. The 30 families rule is preceded in § 4.10 by notice provisions which unambiguously require a counting of parcels of property, rather than dwellings. When a conditional use permit is requested, "all owners of the property within one-half mile of the proposed mineral extraction operation" are entitled to mailed or hand-delivered notice of the required public hearing.

---

[8] Payne & Dolan purchased the property of three of the 27 families located within one-half mile of its proposed quarry. Our analysis remains the same regardless of whether we count 24 or 27 dwellings within one-half mile of the quarry site.

§ 4.10. If the drafters of the 30 families rule had intended to count property owners instead of dwellings, they could easily have done so by using language similar to the notice provision. Instead, the drafters of the 30 families rule referred to "families resid[ing]." When one part of a statutory section or ordinance provision uses terminology different from that found elsewhere in the same provision, an inference may be drawn that the drafter intends distinct meanings. *See Armes v. Kenosha County*, 81 Wis. 2d 309, 318, 260 N.W.2d 515 (1977), *cited in American Motorists Ins. Co. v. R&S Meats, Inc.*, 190 Wis. 2d 196, 214, 526 N.W.2d 791 (Ct. App. 1994). This, along with the definition of "family" provided in § 11.3, leads us to conclude that the drafters of the 30 families rule intended to count the number of dwellings located within one-half mile of a mineral extraction operation. Because the record shows that there are fewer than 30 such dwellings, we conclude that the 30 families rule did not preclude the Town Board's issuance of the conditional use permit to Payne & Dolan.

## V. Notice

¶ 29. We next address whether the Town complied with the zoning ordinance's notice of public hearing provisions. Section 4.4 sets forth the general notice requirements for public hearings on conditional use requests:

> *The Plan Commission Shall Schedule A Public Hearing* on each [conditional use] application and publish a Class 2 notice, pursuant to the requirements of Chapter 985 of the Wisconsin Statutes.

Class 2 notice requires newspaper publication of notice once each week for two consecutive weeks. *See* Wis.

Stat. §§ 985.01(1), 985.07(2). Section 4.10 of the ordinance prescribes the notice requirements for conditional use requests involving mineral extraction operations. In addition to Class 2 notice, § 4.10 requires:

> [W]ritten notice of the public hearing shall be delivered by first class mail or shall be hand delivered by courier to all owners of the property within one-half mile of the proposed mineral extraction operation. Substantial compliance with the notice requirements of this section shall be deemed sufficient.

¶ 30. The trial court determined, and Payne & Dolan concedes, that the published and mailed notices were deficient in two respects. First, both notices inaccurately stated the date of the public hearing as "Tuesday, February 10, 1992," when the correct date was Tuesday, February *11*, 1992. Second, the published notice appeared twice in one week, rather than once each week for two consecutive weeks.

¶ 31. Payne & Dolan disputes a third deficiency in notice found by the circuit court. The circuit court concluded that the Town did not satisfy the § 4.10 requirement that mailed or hand delivered notice be given to "all owners of the property within one-half mile of the proposed mineral extraction operation." Payne & Dolan counters that the Town satisfied § 4.10 by mailing notice to those residents located within one-half mile of the proposed quarry. We agree with the circuit court.

¶ 32. Payne & Dolan fails to recognize the distinction between "residents" and "property owners." There are 27 families residing within one-half mile of the proposed quarry, whereas there are 36 property

owners within the same distance. The different counts result because there are nine families whose residential dwellings are located outside of the one-half mile zone, but whose real estate is nevertheless located within one-half mile of the proposed quarry.[9] Section 4.10 mandates mailed or hand-delivered notice to property owners. Since the Town Clerk mailed notice only to those 27 individuals whose residences fell within one-half mile of the proposed quarry, the mailed notice was deficient.

¶ 33. Although the Town provided deficient notice of the public hearing on the conditional use application, Payne & Dolan's permit is not automatically invalid. Section 4.10 requires "substantial compliance," rather than "strict compliance," with its notice provisions. Substantial compliance with a statutory or ordinance notice requirement exists when the defective notice given nevertheless fulfills the objective of the provision and the record shows that no one was prejudiced by the defect. *See Radtke v. City of Milwaukee*, 116 Wis. 2d 550, 555–56, 342 N.W.2d 435 (1984); *Joint School Dist. v. Joint County School Comm.*, 26 Wis. 2d 580, 585, 133 N.W.2d 317 (1965).

---

[9] Payne & Dolan itself recognizes this distinction between "residents" and "property owners" in its argument involving the "thirty families" rule:

> With respect to notice, the lines must be drawn from the site of the proposed operation to the property lines that are within one-half mile. Thus, any owner of property within one-half mile receives notice of a public hearing, notwithstanding that the owner's actual residence may lie outside of the one-half mile measurement. . . .

Petitioner's Reply Brief at 16.

¶ 34. Notice requirements are generally intended to provide an accurate statement of the time, place, and purpose of a public hearing to those entitled to such notice so that they may attend the hearing and express their views. *Reinders v. Washington County School Comm.*, 15 Wis. 2d 517, 522, 113 N.W.2d 141 (1962); *see also Martin v. Wray*, 473 F. Supp. 1131, 1137 (E.D. Wis. 1979) (purpose of notice provision in zoning ordinance "is to give owners of property involved and other interested parties a fair opportunity to be heard").

¶ 35. The mailed and published notice incorrectly stated the date of the public hearing as Tuesday, February 10, 1992, when the hearing was actually held on Tuesday, February *11*, 1992. A reader of such notice could reasonably believe that the public hearing would take place either on Monday, February 10, 1992, or on Tuesday, February 11, 1992. However, the Town Clerk waited at the Town Hall on Monday evening to advise any misinformed attendees of the correct hearing date, and no one appeared. In addition, the record shows that meetings of the Plan Commission had long been held on Tuesdays. The Town Clerk's remedial efforts ensured that the correct time of the public hearing would be known to the few, if any, citizens who might have been misled by the notice. As such, we conclude that the erroneously stated date did not defeat the purpose of the ordinance's notice provision.

¶ 36. The Town also provided defective notice by publishing notice twice in one week, rather than once a week for two consecutive weeks. We strongly urge notice providers to guard against this kind of technical error. However, such a defect is of little consequence in

this case, and therefore provides an insufficient basis for concluding that the purpose of the ordinance's notice provisions was left unfulfilled.

¶ 37. Mailed or personally served notice of the public hearing was not given to nine of the 36 owners of property located within one-half mile of the proposed quarry, as required by the ordinance. Thus, fully one-quarter of those property owners with the most at stake in Payne & Dolan's conditional use application were not given notice of their only unrestricted opportunity to be publicly heard on the matter. The Town took no curative measures, such as personally notifying the nine property owners who did not receive mailed notice. On these facts, we cannot conclude that the purpose of the ordinance's notice provisions has been fulfilled.

¶ 38. Payne & Dolan asserts that because the plaintiffs in this action were in attendance at the public hearing, they were not prejudiced by and cannot invoke the lack of notice to the other nine owners of property located within one-half mile of the proposed quarry site. Citing *Village of Cobb v. Public Service Comm'n*, 12 Wis. 2d 441, 107 N.W.2d 595 (1961). We disagree. This court held in *Village of Cobb* that plaintiffs who received actual notice of a hearing and who were not prejudiced by others' lack of notice could not object to a commission decision to authorize a railroad's proposed central-agency plan. *Id.* at 449. Thus, Payne & Dolan cannot rely on the rule in *Village of Cobb* until it is first established that the plaintiffs in this case suffered no prejudice by the defective notice.

¶ 39. Because the Town failed to provide the notice required by the ordinance, the burden of proving

no prejudice is placed on the Town.[10] As the sole remaining defendant, Payne & Dolan is relying on the validity of the Town's issuance of the conditional use permit, and must therefore discharge the Town's burden of demonstrating lack of prejudice to the plaintiffs in this case.

¶ 40. Payne & Dolan does not meet its burden of disproving prejudice when it notes that the plaintiffs in this action attended the public hearing. To discharge its burden of proof, Payne & Dolan must show that notice to the nine property owners would not have resulted in a Board decision more beneficial to the plaintiffs. Because Payne & Dolan has placed no such evidence in the record, it has failed to meet its burden of proving lack of prejudice. *See Joint School Dist.*, 26 Wis. 2d at 585 (record must show that no one suffered prejudice as a result of lack of notice). Accordingly, we conclude that the Town did not substantially comply with the ordinance's notice provisions, and that its issuance of the conditional use permit was therefore invalid.

## VI. The Conditional Use Application

¶ 41. The circuit court based its invalidation of the conditional use permit in part on its determination that Payne & Dolan's permit application was incomplete. Because both parties focus their arguments on

---

[10] *See, e.g., Gerrard Realty Corp. v. American States Ins. Co.*, 89 Wis. 2d 130, 145–46, 277 N.W.2d 863 (1979) (insureds who fail to provide statutorily required notice of loss bear the burden of demonstrating lack of prejudice to insurer); *Weiss v. City of Milwaukee*, 79 Wis. 2d 213, 227, 255 N.W.2d 496 (1977) (failure to comply with notice of claim statute puts burden on claimant to establish nonexistence of prejudice to municipality).

the notice provisions of § 4.10, our analysis of the adequacy of the application will also center on that section of the ordinance. Section 4.10 provides in part:

> *Application.* Applications for a conditional use permit for a mineral extraction operation. . .shall be accompanied by [: . . .] a detailed description of all aspects of the proposed extraction operation; a list of equipment, machinery and structures which may be used; the source, quantity, and disposition of water to be used, if any; a legal description of the proposed site; a topographic map of the site and the area abutting the site, to the nearest public road right-of-way or a minimum distance of 300 feet on all sides of the site drawn at a minimum vertical contour interval of five (5) feet and showing all existing and proposed private access roads and the depth of all existing and proposed excavations; and a restoration plan.

¶ 42. The plaintiffs assert that Payne & Dolan's application was incomplete because it omitted the following: 1) a "detailed" description of all aspects of the operation; 2) the quantity of water to be used in the operation; 3) a topographic map showing the depth of existing and proposed excavations; and 4) a restoration plan. Payne & Dolan contends that its application described the operation with sufficient particularity, but does not dispute that at the time of submission, the application omitted the quantity of water to be used, a topographic map with proposed depths, and a restoration plan.

¶ 43. Initially, we conclude that unless a zoning ordinance provides to the contrary, a court should measure the sufficiency of a conditional use application at the time that notice of the final public hearing is first

237

given.[11] Such a rule ensures that interested individuals will have a meaningful opportunity to express informed opinions at the public hearings. Indeed, a contrary rule would create a damaging incentive for a conditional use permit seeker to withhold all controversial information from its application until during or after the public hearing. Such a perverse incentive would be diminished only slightly by requiring a complete application at the time of the public hearing, for even our ablest citizens would be hard pressed to digest and discuss in a single public hearing all of the debatable proposals in a given conditional use application. Requiring a complete application at the time that the last public hearing is noticed places no significant burden on conditional use applicants, and provides ample opportunity for interested citizens to inform themselves in preparation for the hearing.[12]

[11] Payne & Dolan does not dispute that the only public hearing in this case was held on February 11, 1992. It notes that the public was invited to attend subsequent Plan Commission "meetings" dealing with the conditional use permit. However, Payne & Dolan does not assert, and the record does not show, that any of the subsequent meetings were noticed or conducted in the manner of a public hearing. For example, the attendees at these meetings were not permitted to speak in favor of or against the proposed quarry.

[12] We reject Payne & Dolan's view that the information contained in a conditional use permit application is important only to the Town Plan Commission and Board, and may therefore be provided at any time prior to the issuance of the permit. We cannot accept such a view because we do not believe that the ordinance anticipates a public hearing at which citizens participate as mere passive spectators. If such were the case, there would be no need for public hearings.

¶ 44. Payne & Dolan's application describes with sufficient particularity those components of the quarrying operation which were actually set forth in the application at the time that the Town gave notice of the February 11, 1992, public hearing. We also note that § 4.10 expressly authorizes conditional use applicants to submit a restoration plan "prior to the *issuance* of a conditional use permit." Thus, the application's lack of a restoration plan at the time of notice of the public hearing cannot form a basis for determining that the application was incomplete.

¶ 45. At the time that notice of the public hearing was given, the application lacked a description of the quantity of water to be used in the operation of the quarry. There is no ordinance provision authorizing later inclusion of the water consumption information. The information may be important to those residents located in the vicinity of the proposed quarry site. For example, the quarry's proposed use of groundwater carries the potential for diminished availability of well water in the surrounding area, depending on the amount of water consumed by the quarry. Information on the quantity of water to be used might also be relevant to the feasibility of the quarry's proposed methods of controlling water runoff.

¶ 46. The application also lacks a topographic map describing the proposed depths of the quarry. This information could be useful to interested citizens for several reasons. First, it would provide a description of the height hazard presented by the quarry. Second, the proposed depth of the excavation could have a bearing on the quarry's life span. Third, the environmental impact of the quarry could vary with the excavation's depth. As with the water consumption information,

there is no ordinance provision authorizing later submission of the topographic map.

¶ 47. We have determined that an application must be complete at the time that notice is given of the last public hearing, unless an ordinance expressly permits a later submission of information. Here, the conditional use application was incomplete because it did not contain information regarding the quantity of water to be used in the quarrying operation or the proposed depth of the quarry. There being no ordinance provision authorizing subsequent submission of either type of information, we conclude that the application was insufficient.

¶ 48. In summary, we conclude that the Town's zoning ordinance permits blasting and crushing as part of a mineral extraction operation. Accordingly, we disagree with that portion of the court of appeals' decision holding to the contrary. In addition, Payne & Dolan's proposed quarry did not violate the 30 families rule. However, because the Town failed to substantially comply with the zoning ordinance's notice provisions, and because Payne & Dolan's conditional use application was incomplete at the time that notice of the public hearing was first given, we conclude that the Town improperly granted the conditional use permit. Accordingly, we affirm on other grounds the court of appeals' invalidation of the conditional use permit.

*By the Court.*—The decision of the court of appeals is affirmed.