COURT OF APPEALS
DECISION
DATED AND FILED

April 6, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1183**

STATE OF WISCONSIN

Cir. Ct. No. 2017CV264

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN EX REL. RAYMOND FRIGO AND JAMES WOLFORD,

   PETITIONERS,

THOMAS PECKHAM,

   PETITIONER-APPELLANT,

   V.

POLK COUNTY BOARD OF ADJUSTMENT,

   RESPONDENT-RESPONDENT.

   APPEAL from an order of the circuit court for Polk County: MELISSIA R. MOGEN, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings.*

   Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Thomas Peckham appeals an order denying his petition for a writ of certiorari, in which he sought to invalidate a conditional use permit ("CUP") the Polk County Board of Adjustment had issued to Keith and Cheryl Johnson.  We agree with Peckham that the notice of public hearing was deficient and failed to comply with the relevant ordinances because a copy of the notice and CUP application were not sent to the Deer Lake Improvement Association.  We reject, however, Peckham's assertions that the CUP application was incomplete, that the notice contained an incomplete description of the proposed uses, and that the Board proceeded on an incorrect theory of law when it elected not to deny the CUP application under an ordinance provision governing uses allowed as a right.  Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶2     The Johnsons own 19.89 acres of agricultural property located in St. Croix Falls, Wisconsin (the "Property").  The Property is located within 1,000 feet of Deer Lake and is within the "shoreland area" regulated by Polk County's Shoreland Protection Zoning Ordinance.[1]  Most of the Property is zoned in the General Purpose District under the Shoreland Ordinance, which enumerates certain allowed uses for the Property, such as single-family dwellings and boathouses.  *See* SHORELAND ORDINANCE, art. 8.C. The Shoreland Ordinance also

---

[1] *See generally* POLK COUNTY, WIS., SHORELAND PROTECTION ZONING ORDINANCE, ORDINANCE NO. 33-16 (2016).  We will refer to this as the "Shoreland Ordinance."

provides for certain uses allowed upon issuance of a CUP. *See* SHORELAND ORDINANCE, art. 8.E.

¶3 In July 2017, the Johnsons sought a CUP for the purposes of moving their chiropractic office to the Property and opening an organic winery attached to the office.[2] The application also contemplated that special events would be held on the Property, including small weddings, anniversary parties, and car shows. The application requested that the CUP be issued under Article 8.E.4. of the Shoreland Ordinance, which states that property may be used, subject to the requirements of a CUP, for "[b]usinesses customarily found in recreational areas."

¶4 On August 3, 2017, the Board sent a notice of hearing on the Johnsons' CUP application to the adjoining property owners, and it subsequently published the same notice in two local newspapers. The notice informed its recipients of the matters on the Board's agenda for the public hearing on August 22, 2017, including the Johnsons' CUP application, which was described as a request for "a chiropractic office and winery." The notice also informed the public that the Board would call its meeting to order at 8:30 a.m., "recess at 8:45 a.m. to view sites and reconvene at 1:00 p.m. at the Government Center in Balsam Lake," at which time it would require the applicants to appear and inform the Board of their request. The Deer Lake Improvement Association was not listed among the individuals and entities that received the notice.

¶5 The Board held the public hearing as noticed, including by recessing at 8:45 a.m. to conduct site visits. During this time, the Board visited the

---

[2] Prior to filing their CUP application, the Johnsons had obtained a land use permit and had begun construction of a building on the Property.

Johnsons' property. The Board reconvened at 1:00 p.m. to hear public testimony, including Peckham's and others' objections to the Johnsons' CUP application. The Board's discussions with the Johnsons while at the site were not recorded, nor were they made part of the public hearing record or disclosed in detail at the public meeting. The Board subsequently issued a written determination approving the CUP with several conditions.

¶6     Peckham, together with two other petitioners, sought certiorari review of the CUP in the circuit court. The court ultimately rejected the petitioners' challenges, including their assertions that the Johnsons' CUP application was incomplete, that there had been insufficient notice of the public hearing on the CUP, that the Board had failed to properly interpret and apply its ordinances, and that the CUP was not supported by substantial evidence. Peckham now appeals.[3] Additional facts will be set forth below as necessary.

## DISCUSSION

¶7     The Board's decision is reviewable by certiorari under WIS. STAT. § 59.694(10) (2019-20). We review the record of the proceedings before the Board rather than the circuit court's findings or judgment. *Oneida Seven Generations Corp. v. City of Green Bay*, 2015 WI 50, ¶42, 362 Wis. 2d 290, 865 N.W.2d 162. The Board's decision is entitled to a presumption of correctness and validity. *Sills v. Walworth Cnty. Land Mgmt. Comm.*, 2002 WI App 111, ¶6, 254 Wis. 2d 538, 648 N.W.2d 878.

---

[3] The other petitioners have not appealed the circuit court's determination to uphold the CUP.

¶8　　On certiorari review, our review is limited to four inquiries: (1) whether the Board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that the Board might reasonably make the order or determination in question. *See Oneida Seven Generations Corp.*, 362 Wis. 2d 290, ¶41. To the extent we are required to interpret and apply the language of an ordinance provision, our review of those issues is de novo, and we follow the same standards that govern our interpretation of statutes. *Weber v. Town of Saukville*, 209 Wis. 2d 214, 224, 562 N.W.2d 412 (1997).

*I.　Completeness of the CUP application*

¶9　　Peckham first argues the Johnsons' CUP application was incomplete under *Weber*. *Weber* concerned an ordinance that specifically designated several items that were required to accompany an application for a CUP for a mineral extraction operation. *Id.* at 237. Our supreme court held that "unless a zoning ordinance provides to the contrary, a court should measure the sufficiency of a conditional use application at the time that notice of the final public hearing is first given." *Id.* at 237-38. The court concluded the application at issue in *Weber* was insufficient because it did not contain information required by the ordinance and no other ordinance provision authorized the later submission of the missing required information. *Id.* at 240.

¶10　　Here, Peckham asserts that Article 8.E. of the Shoreland Ordinance required the Johnsons to submit with their CUP application an erosion control plan and a storm water management plan. Article 8.E. governs conditional uses and sets forth nine categories of uses that may be authorized with a CUP. In the

introductory language to Article 8.E., prior to setting forth the nine categories of conditional uses, the Shoreland Ordinance states, "Erosion control plans and storm water management plans shall be required." Peckham also relies on Article 3.A.'s hortatory language, in setting forth the purpose of the Shoreland Ordinance, that "development and alterations that may affect the natural function of the shore lands of Polk County shall be controlled and regulated so as to cause no harm." Peckham argues that, collectively, these provisions required the Johnsons to submit erosion control and storm water management plans in advance of the public hearing, so that they could be the subject of public comment.

¶11    The Board argues that *Weber* does not apply here because Peckham misconstrues Article 8.E. of the Shoreland Ordinance as requiring that the relevant plans be submitted at the time of application, when it does not. We agree with the Board. In *Weber*, the relevant ordinance provision was clearly labeled "Application" and specified that CUP applications for mineral extraction operations "shall be accompanied by" various documents and descriptions. *Weber*, 209 Wis. 2d at 237. Here, Article 8.E. does not directly govern the contents of a CUP application. Moreover, it provides that erosion control plans and storm water management plans "shall be required," without specifying that they are required at the time of application.

¶12    In sum, Article 8.E. discusses certain uses that are authorized "upon the issuance of a conditional use permit." By stating only generally that "[e]rosion control plans and storm water management plans shall be required," without specifically stating that such plans are necessary at the time of application, Article 8.E. can be read in only one way: namely, to mandate that such plans be submitted by the property owner as a condition of granting the CUP. Peckham has failed to demonstrate that Article 8.E. plainly requires erosion control and storm

6

water management plans to accompany an application. Accordingly, *Weber* does not clearly dictate that such plans must be available at the time notice of the public hearing is issued.

¶13 Consequently, we conclude the Board kept within its jurisdiction, proceeded on a correct theory of law, and did not act arbitrarily when it proceeded to reach the merits of the Johnsons' CUP application. The CUP as issued ultimately required the Johnsons' "runoff & erosion control plan to be approved by [the] Zoning Department" and stated that "all runoff from buildings will be collected." These directives were sufficient to satisfy the Board's obligations of requiring erosion control and storm water management plans under Article 8.E. We therefore affirm the circuit court's conclusion in this regard.

## II. *Sufficiency of the Board's hearing notice*

¶14 Peckham again relies on *Weber* in asserting that the Board's public notice was deficient because it contained an "incomplete description of the conditional uses requested." In *Weber*, the supreme court concluded the municipality had failed to provide proper public notice to property owners, as required by ordinance, when the municipality sent notice only to *residents* within the designated geographic area. *Weber*, 209 Wis. 2d at 231-36. This approach resulted in nine property owners not being mailed or personally served with the notice of hearing. *Id.* at 235. The court determined that the omission of these owners defeated any assertion that the municipality had substantially complied with the notice requirement set forth by ordinance. *Id.*

7

¶15    Here, Peckham asserts the notice was deficient because it did not comply with the notice requirement imposed by the Polk County Board of Adjustment Procedures Ordinance.[4]    The notice, as relevant here, stated that the Johnsons were requesting a CUP "for a chiropractic office and winery."    Peckham asserts the notice failed to notify the public that the Johnsons were also requesting to hold small events at the Property.

¶16    The provisions of the Procedures Ordinance to which Peckham points, however, do not mandate the substance of the notice.    Rather, Section 3.0, for example, refers to Wisconsin's open meetings law, stating generally that "[a]ll meetings shall be open to the public and in accordance with the Open Meeting[s] Law."    Meanwhile, Section 5.8, titled "Notice of Hearing," describes who is entitled to notice of the hearing and how notice is to be provided, but it does not dictate how specific the notice must be regarding the proposed use.[5]    Peckham's reliance on **Weber** is therefore inapposite, as **Weber** involved an alleged violation of the notice requirements of an ordinance.

---

[4] *See generally* POLK COUNTY, WIS., BOARD OF ADJUSTMENT PROCEDURES ORDINANCE.  We will refer to this as the "Procedures Ordinance."

[5] The Procedures Ordinance mandates that a copy of an application be submitted to certain entities, including the relevant municipality, any affected lake association, and nearby property owners.  As such, it appears Polk County regards the general notice of hearing as sufficient to prompt concerned property owners to review the substance of the application, rather than attempting to state with particularity every use for which the property owner is seeking a CUP.

¶17     As a result, Peckham's sole legal basis for his assertions regarding the defective content of the notice appears to be Wisconsin's open meetings law.[6] We agree with the Board that Peckham's failure to pursue a circuit court ruling on the alleged open meetings law violation precludes our review of that issue on our certiorari review. Peckham first advanced a claim for an alleged open meetings law violation in an amended complaint filed in the midst of the circuit court proceedings. But by stipulation, the parties agreed that the court could proceed to rule on the certiorari petition and "hold its decision on the Open Meeting[s] Law claim in abeyance pending the decision on the Certiorari Petition."

¶18     Because Peckham affirmatively requested that the circuit court abstain from ruling on the open meetings law issue, he cannot on appeal argue that this issue warrants reversal. The court relied on the stipulation in stating that it would not address the open meetings law issues. Even though certiorari review focuses us on the record of the proceedings before the Board, "[w]e will not … blindside trial courts with reversals based on theories which did not originate in their forum." *State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995). If Peckham wished to advance an open meetings law claim on appeal, it

---

[6] Our conclusion about the nature of Peckham's argument is buttressed by the fact that Peckham primarily relies on *State ex rel. Buswell v. Tomah Area School District*, 2007 WI 71, 301 Wis. 2d 178, 732 N.W.2d 804, an open meetings law case that articulated a multifactor approach to determining whether the subject matter of a public meeting has been properly noticed.

In his reply brief, Peckham argues that *Weber v. Town of Saukville*, 209 Wis. 2d 214, 562 N.W.2d 412 (1997), "plainly demonstrates [that] the sufficiency of public notice is properly considered outside an Open Meetings Law claim." Again, the issue in *Weber* was whether the notice complied with the requirements of the relevant ordinance—and the Procedures Ordinance here does not dictate the specificity required of the notice of hearing as it relates to the proposed use. Accordingly, the only legal basis for Peckham's insufficiency-of-notice claim regarding the notice's substance is the open meetings law.

was incumbent upon him to first seek a resolution of that claim before the circuit court.

¶19    Alternatively, Peckham contends that the public hearing notice was defective because the Board failed to properly supply a copy of the notice and the CUP application to the Deer Lake Improvement Association.  Peckham contends such notice was required under Sections 5.2, 5.81 and 5.82 of the Procedures Ordinance.  Section 5.2 provides that if a CUP application "affect[s] property within the wetland/shoreland," one copy of the application shall be sent "to any affected lake association or lake protection & rehabilitation district."  Section 5.81 similarly states that a notice of hearing shall be mailed to "any affected lake association or lake protection & rehabilitation district" at least ten days prior to the hearing.  Section 5.82 mandates that a copy of the application be sent to the same entities in connection with a notice of hearing.

¶20    Peckham's briefs and pleadings fail to state even the most basic facts about the Deer Lake Improvement Association or its potential interests in the CUP.[7]  Nonetheless, the Board's only response to Peckham's argument in this regard is to assert that the Association is not "affected" because the Johnsons' Property is located 435 feet from the lake.  The Board argues the Shoreland Ordinance sets forth the operative standard for determining when a property is

---

[7] However, as Peckham's reply brief notes, the Board does not dispute that the Association is the recognized lake association for Deer Lake or that the Johnsons' proposed use is located within Deer Lake's shoreland as defined by the Shoreland Ordinance.

To the extent Peckham's reply brief argues the CUP should be invalidated because the Board failed to provide a copy of its written decision, this argument appears to have been made for the first time in his reply brief and we therefore will not consider it.  *See State v. Marquardt*, 2001 WI App 219, ¶39, 247 Wis. 2d 765, 635 N.W.2d 188.

"affected" under the Procedures Ordinance. Specifically, the Board points to the Shoreland Ordinance's requirement that the notice of public hearing on a CUP application be sent to "all property owners within 300 feet of the site under consideration." In sum, the Board concludes that "only when an applicant's property is on a lake [i.e., within 300 feet of the lake], does the lake association become an 'affected lake association'" for purposes of the Procedures Ordinance.

¶21 The Board's legal conclusion is incorrect. The Shoreland Ordinance merely describes which nearby *property owners* are entitled to a notice of public hearing under its provisions. It does not define what constitutes an "affected lake association" for purposes of the Procedures Ordinance. On that point, the Procedures Ordinance provides a clue: its use of the phrase "within the wetland/shoreland." The Shoreland Ordinance states, as relevant here, that the shoreland area to be regulated "shall be considered as those lands within one thousand (1,000) feet of the OHWM of any navigable lake." We conclude that the relevant provisions of the Procedures Ordinance plainly regard an "affected lake association" as any association with an interest in a project within the shoreland area—i.e., within 1,000 feet—of the affected lake.

¶22 Because the Board failed to provide the notice required by the Procedures Ordinance, it bears the burden of showing that Peckham was not prejudiced.[8] *See **Weber***, 209 Wis. 2d at 233. Again, the Board offers no reason to question the factual predicates for Peckham's argument or his ability to invoke a failure of notice on the Deer Lake Improvement Association's behalf. The failure

---

[8] Because Peckham has briefed the issue, we assume, without deciding, that a "substantial compliance" defense would be available to the Board that would ameliorate the effect of the notice violation.

of notice renders the CUP invalid, and we therefore reverse and remand the matter for further proceedings consistent with this opinion.

¶23 Nevertheless, we briefly address Peckham's final assertion regarding notice, which is that the Board's notice was deficient because it misled the public. Specifically, Peckham argues that the notice misled the public into believing they were not allowed to attend the site visits. Contrary to Peckham's arguments, there is nothing inherent in the notice's terms "recess" and "reconvene" that suggests an intent to prohibit the public from attending. Nor does the notice, taken in context, fairly suggest such a reading. To the extent Peckham suggests the notice otherwise violated the open meetings law, he is foreclosed from making such an argument in this appeal of the circuit court's certiorari decision, for the reasons previously explained.

*III. Legal sufficiency of the Board's decision*

¶24 Peckham next argues the Board's decision to allow a chiropractic office violated Article 8.C.7. of the Shoreland Ordinance, and therefore the Board proceeded on an incorrect theory of law when it granted the CUP.[9] Article 8.C. governs "allowed uses"—that is, uses allowed as of right in the General Purpose District. The Shoreland Ordinance identifies "professional offices" as allowed uses, as long as they are "incidental to the residential use of the property, provided that no more than 50 percent of the one floor shall be devoted to such offices contained within the dwelling or accessory building." As Peckham points out, the

---

[9] We elect to reach the merits of this issue because it may recur if the Johnsons reapply for a CUP.

Johnsons' chiropractic office did not meet the criteria of Article 8.C.7., because it was not a part of their residence.

¶25    But the Board did not grant the CUP under the auspices of Article 8.C.7.   Rather, it granted the CUP under Article 8.E., which generally governs "conditional uses"—that is, uses that are not allowed as a right, but that are allowed upon the issuance of a CUP.   Article 8.E.4., under which the Johnsons applied, states that conditional uses can include "[b]usinesses customarily found in recreational areas."   Peckham argues the Board could not grant a CUP under Article 8.E.4. of the Shoreland Ordinance because Article 8.C.7. "is the more specific provision as it pertains to professional offices" and therefore is the only applicable provision.

¶26    Peckham is plainly incorrect in his interpretation of the Shoreland Ordinance.   He misapplies the general rule of statutory construction that "where two statutes relate to the same subject matter … the specific statute controls over the general statute."   *See Gottsacker Real Est. Co. v. DOT*, 121 Wis. 2d 264, 269, 359 N.W.2d 164 (Ct. App. 1984).   While Articles 8.C. and 8.E. might arguably cover some of the same general types of uses for property in the General Purpose District, those provisions do not relate to the same subject matter because the former governs uses that are automatically allowed and the latter governs uses that require the issuance of a CUP.   Accordingly, the Board proceeded on a correct theory of law when it granted the Johnsons' CUP application under Article 8.E.4. of the Shoreland Ordinance.

*IV. Sufficiency of the evidence supporting the Board's decision*

¶27    Peckham also asserts the Board's decision was not supported by substantial   evidence   in   the   record.      He   argues   the   Board   gave   explicit

13

consideration to much of the evidence the Johnsons presented, whereas it "failed to acknowledge much less consider <u>any</u> evidence put forth by the objectors." Given our conclusion that the hearing notice was deficient and a new, properly noticed public hearing must be held on the CUP application, we have no need to address this issue. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).

¶28 No WIS. STAT. RULE 809.25 (2019-20) costs awarded to either party.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).