STATE of Wisconsin, Plaintiff-Respondent,

v.

John C. SETAGORD, Defendant-Appellant-Petitioner.
[Case No. 96–0207-CR]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles C. DOWNING, Defendant-Appellant. [Case No. 96–1264–CR]

Supreme Court

*Nos. 95–0207–CR, 96–1264–CR. Oral argument March 6, 1997.—Decided July 1, 1997.*

(Also reported in 565 N.W.2d 506.)

398

BABLITCH, J., dissents.
ABRAHAMSON, C.J. and BRADLEY, J., join.

No. 95–0207–CR: For the defendant-appellant-petitioner there were briefs by *Charles G. Curtis, Jr.* and *Foley & Lardner*, Madison and oral argument by *Charles G. Curtis, Jr.*

For the plaintiff-respondent the cause was argued by *David J. Becker*, assistant attorney general, with whom on the brief was James E. Doyle, *attorney general.*

No. 96–1264–CR: For the defendant-appellant there were briefs and oral argument by *Robert T. Ruth*, Madison.

For the plaintiff-respondent the cause was argued by *David J. Becker*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1.   JANINE P. GESKE, J.   For their roles in a 1991 hostage-taking and attempted jailbreak, John C. Setagord (Setagord) and Charles C. Downing (Downing) received mandatory life sentences, with parole eligibility dates far beyond their respective anticipated life spans. Setagord seeks review of a court of appeals' decision affirming the circuit court's imposition of a parole eligibility date of October 21, 2091. On a motion to bypass the court of appeals, Downing appeals the circuit court's imposition of a parole eligibility date of October 21, 2177.

¶ 2.   Both defendants argue that Wis. Stat. § 973.014(1)(b) does not authorize the circuit court to effectively deny parole by setting a parole eligibility date beyond a defendant's anticipated lifetime. We conclude that § 973.014(1)(b) unambiguously grants the circuit court discretion to impose a parole eligibility date beyond a defendant's expected lifetime. We also

401

conclude that the circuit court did not erroneously exercise its discretion in setting Setagord and Downing's respective parole eligibility dates. Accordingly, we affirm the court of appeals' decision in the Setagord case, and affirm the circuit court's order imposing sentence in the Downing case.

## FACTS AND PROCEDURAL HISTORY

¶ 3. The relevant facts are not in dispute. Setagord and Downing unsuccessfully attempted to escape from the Dane County Jail with a third inmate, Juan Ruiz, on October 20, 1991. Setagord, Downing and Ruiz took Deputy Julie McReynolds hostage during a jailbreak attempt. During the seizure, both Setagord and Downing struck McReynolds. She was tied up by her hands and feet. Setagord threatened several times to kill McReynolds, and also threatened to break her legs. Deputy McReynolds was released after thirteen hours of confinement, and after sustaining a cut to the head, bruises and a knee injury. During the early part of the escape attempt, Downing struck another deputy several times with a cribbage board.

¶ 4. The State filed a criminal complaint that charged Downing, Setagord and Ruiz with the Class A felony of taking a hostage, as a party to a crime, in violation of Wis. Stat. §§ 940.305[1] and 939.05; with conspiracy to escape, in violation of Wis. Stat.

---

[1] As the court of appeals correctly noted, Wis. Stat. § 940.305(2) provides that if a person taken hostage is released without bodily harm before the actor's arrest, the crime is a Class B felony. Setagord and Downing were charged with a Class A felony because they inflicted bodily harm on Deputy McReynolds. The penalty for a Class A felony is life imprisonment. Wis. Stat. § 939.50(3)(a).

§§ 946.42(3)(a) and 939.31; and with battery to a police officer in violation of Wis. Stat. § 940.20(2). Because they were repeat offenders, Setagord and Downing were also charged under the penalty enhancement provision of Wis. Stat. § 939.62(1).

¶ 5.  Setagord and Downing each reached plea agreements with the State following a half day of trial testimony on May 19, 1992. Setagord entered a plea of no contest to the hostage-taking charge and guilty to the other two charges in return for dismissal of the repeater allegation on the hostage-taking charge. Downing entered a plea of no contest to the charges in return for dismissal of the repeater allegation on the hostage-taking charge.

¶ 6.  On August 28, 1992, the Circuit Court for Dane County, Robert R. Pekowsky, conducted a sentencing hearing for Setagord. The circuit court sentenced Setagord to life in prison without parole for the hostage-taking charge, and to 11 years for each of the other two charges. Setagord appealed the sentence of life without parole. The court of appeals reversed that sentence,[2] holding that Wis. Stat. § 973.014 (1991–92) did not authorize a circuit court to impose a sentence of life imprisonment without parole. The court held that the statute allows the circuit court only two options, either to determine parole eligibility pursuant to the standards under Wis. Stat. § 304.06(1),[3] or

---

[2] *State v. Setagord*, 187 Wis. 2d 340, 342, 523 N.W.2d 124 (Ct. App. 1994) (hereinafter *Setagord I*).

[3] Wis. Stat. § 304.06(1) (1991–92) provides in pertinent part as follows:

**Paroles from state prisons and house of correction.**

(b)   Except as provided in sub. (1m) or s. 161.49(2), 302.045(3) or 973.032(5), the parole commission may parole an inmate of the Wisconsin state prisons or any felon or any inmate of the Wisconsin

to set an alternative parole eligibility date of its own. 187 Wis. 2d at 344. On remand for resentencing, the circuit court imposed a parole eligibility date of October 21, 2091. That date was one hundred years from the date of the crimes Setagord committed, as requested by the State.[4] Setagord again appealed.

¶ 7. The court of appeals upheld Setagord's parole eligibility date. *State v. Setagord*, No. 95–0207-CR, unpublished op. (Wis. Ct. App. July 11, 1996) (hereinafter *Setagord II*). The court held that Wis. Stat. § 973.014(1)(b) permits a circuit court to set a parole eligibility date beyond a person's expected lifetime. *Setagord II* at 10–11. Because the court found the sentencing statute ambiguous, the appellate court looked to legislative history to discern the legislative intent. *Id.* at 5. The court found that this history supported the State's view that the circuit court may effectively deny parole by setting a parole eligibility date 100 years in

state prisons or any felon or any person serving at least one year or more in the Milwaukee county house of correction or a county reforestation camp organized under s. 303.07, when he or she has served 25% of the sentence imposed for the offense, or 6 months, whichever is greater. Except as provided in s. 973.014, the parole commission may parole an inmate serving a life term when he or she has served 20 years, as modified by the formula under s. 302.11 (1) and subject to extension using the formulas under s. 302.11(2). The person serving the life term shall be given credit for time served prior to sentencing under s. 973.155, including good time under s. 973.155(4). The secretary may grant special action parole releases under s. 304.02. The department or the parole commission shall not provide any convicted offender or other person sentenced to the department's custody any parole eligibility or evaluation until the person has been confined at least 60 days following sentencing.

[4] At the resentencing, the circuit court also imposed five years on Count 2 consecutive to Count 1, and 11 years on Count 3 consecutive to each other and to Count 1.

the future. *Id.* at 9. The court of appeals also held that the circuit court did not erroneously exercise its discretion in imposing the 100-year parole eligibility date. *Id.* at 23. Setagord petitioned for review by this court.

¶ 8. Like Setagord, Downing was initially sentenced by Judge Pekowsky. At the January 19, 1993, sentencing hearing, the State asked that "Mr. Downing be sentenced to serve the rest of his life in prison with no opportunity for parole." The circuit court sentenced Downing to life imprisonment without parole on the hostage-taking charge, to be served consecutively to the sentences he was already serving. In addition, the court sentenced Downing to three consecutive five-year sentences on the remaining charges. Downing appealed, arguing that the circuit court erred in imposing a life sentence without parole. The court of appeals reversed, and remanded for resentencing based on its decision in *Setagord I. State v. Downing*, unpublished op. (Wis. Ct. App. May 18, 1995).

¶ 9. The circuit court conducted a resentencing hearing on November 8, 1995. At that time, the State asked the court to ensure that Downing never again be a free man. The circuit court agreed to follow the State's recommendation, and sentenced Downing to life imprisonment with a parole eligibility date of October 21, 2177, on the hostage-taking charge. The circuit court also reimposed the five-year consecutive sentences on the other charges. Downing again appealed, arguing that Wis. Stat. § 973.014(1)(b) did not authorize a parole eligibility date beyond his expected lifetime. We granted Downing's petition to bypass the court of appeals.

¶ 10. The principal question presented by both Setagord and Downing involves interpretation of a

405

statute, a question of law that we review *de novo*. *State v. Eichman*, 155 Wis. 2d 552, 560, 455 N.W.2d 143 (1990). The purpose of statutory interpretation is to discern the intent of the legislature. *Id.* To do so, we first consider the language of the statute. If the language of the statute clearly and unambiguously sets forth the legislative intent, we apply that intent to the case at hand and do not look beyond the statutory language to ascertain its meaning. *Kelley Co., Inc. v. Marquardt*, 172 Wis. 2d 234, 247, 493 N.W.2d 68 (1992); *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 281–82, 548 N.W.2d 57 (1996).

¶ 11. Setagord contends that Wis. Stat. § 973.014(1)(b) is ambiguous, and when properly construed, requires an earlier parole eligibility date. Downing takes a different approach, but reaches the same result. Downing contends that the statute is unambiguous, and clearly requires meaningful parole eligibility. The State asserts that the statute is unambiguous. Under the State's reading, the term "any later date" can include a parole eligibility date beyond the defendant's expected lifetime.

¶ 12. A statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons. *Wagner Mobil, Inc. v. City of Madison*, 190 Wis. 2d 585, 592, 527 N.W.2d 301 (1995). However, a statute is not rendered ambiguous merely because the parties disagree as to its meaning. *Id.* If a statute is ambiguous, we look to the scope, history, context, subject matter, and object of the statute in order to ascertain legislative intent. However, resort to legislative history is not appropriate in the absence of a finding of ambiguity. *See Cynthia E. v.*

*LaCrosse County Human Services Dep't*, 172 Wis. 2d 218, 229, 493 N.W.2d 56 (1992).

¶ 13.   These cases present a question of first impression. We upheld Wis. Stat. § 973.014(1)(b) against a constitutional challenge in *State v. Borrell*, 167 Wis. 2d 749, 759, 482 N.W.2d 883 (1992). Now we are asked to determine whether the legislature intended to authorize a sentencing court to set a parole eligibility date beyond a defendant's expected lifetime. If we conclude that the statute authorizes parole eligibility determinations that afford no possibility of parole, Setagord and Downing ask that we then conclude that the sentencing court erroneously exercised its discretion in setting their parole eligibility dates.

## STATUTORY INTERPRETATION

¶ 14.   We begin with the premise that sentencing is a matter of legislative policy. *In Matter of Judicial Administration: Felony Sentencing Guidelines*, 120 Wis. 2d 198, 203, 353 N.W.2d 793 (1984). The legislature decides whether and to what degree the sentencing court's discretion should be limited. 120 Wis. 2d at 203. The legislature conveys its intent as to sentencing policy, and the extent of judicial sentencing discretion, by enacting sentencing statutes. At the time Setagord and Downing took Deputy McReynolds hostage, the sentencing statute at issue here provided:

> . . . *the court* shall make a parole eligibility determination. . .(b). . .Under this subsection, the court may set *any later date* than that provided in s. 304.06(1)
> . . .

Wis. Stat. § 973.014(1). (Emphasis added.)

¶ 15. Through this provision the legislature has delegated to the sentencing court the power to make a determination of parole eligibility by setting a minimum date for a convicted felon's parole eligibility.

¶ 16. The statute does not set, however, a maximum date for a convicted felon's parole eligibility. The only qualification expressed by the term "any later date" is a minimum eligibility date. We conclude that the only reasonable reading of the plain language of the statute is that the legislature unambiguously set a minimum, but not a maximum, date for parole eligibility.

¶ 17. Setagord contends, however, that this sentencing statute is ambiguous, and, taking into account rules of statutory interpretation and construction, must be read to authorize a parole eligibility date reasonably less than the functional equivalent of life without parole.

¶ 18. Setagord first makes a comparative argument, juxtaposing Wis. Stat. § 973.014(1)(b) against other sentencing statutes. He points out that other statutory provisions expressly provide for life sentences without parole in different circumstances than those present here. Thus, according to Setagord, the legislature could not have intended to allow courts to impose an "indirect" sentence of life without parole under Wis. Stat. § 973.014(1)(b). Section 973.014(2)(1993–94), for example, expressly provides that "persistent repeaters" are subject to life imprisonment "without possibility of parole." The more recently enacted Wis. Stat. § 973.014(1)(c)[5] expressly authorizes the circuit court to declare that a defendant

---

[5] 1995 Wis. Act 48, § 5, codified as Wis. Stat. § 973.014(1)(c), and effective August 31, 1995, provides:

sentenced to life imprisonment "is not eligible for parole." Setagord argues that these provisions show that when the legislature intends to authorize a sentence of life without parole, it does so directly through plain and unambiguous language. Setagord does not argue that these other provisions expressly preclude a sentence of parole eligibility under Wis. Stat. § 973.014(1)(b) beyond the defendant's expected lifetime.

¶ 19.    Setagord also points to two federal court decisions that found sentencing statutes ambiguous. In *United States v. Fountain*, 840 F.2d 509 (7th Cir.), *cert. denied*, 488 U.S. 982 (1988),[6] the court considered a defendant's challenge to a 150-year sentence for conspiracy to commit murder, with parole eligibility after 50 years. The sentence effectively denied parole. The

---

The person is not eligible for parole. This paragraph applies only if the court sentences a person for a crime committed on or after the effective date of this paragraph.

[6] We recognize that the *Fountain* decision reflects one side of a split among the federal circuits on the question of the effect of 18 U.S.C. § 4205(b) in conjunction with sentences under 18 U.S.C. § 1117. *United States v. Fountain*, 840 F.2d 509, 518–19 (7th Cir. 1988). Setagord also cites to Chief Judge Posner's concurrence in *United States v. Prevatte*, 66 F.3d 840 (7th Cir. 1995) in support of his position. Chief Judge Posner noted that if a judge used a sentence of a term of years to imprison a defendant for his natural life, such a sentence would circumvent the federal statute requiring that a jury recommend a life sentence. *Id.* at 846–47. The *Prevatte* holding, that the district court would have to consider the defendant's life expectancy, *id.* at 843–44, and Chief Judge Posner's concurrence, which in any event are not binding on this court, are distinguishable in that parole had been abolished in the federal penal system, and the Wisconsin legislature has not delegated the authority to recommend life sentences to juries.

court first considered the requirements of the applicable sentencing statues. Under the first degree murder statute, a life sentence was mandatory. 18 U.S.C. § 1111. Under the plain language of the conspiracy statute, 18 U.S.C. § 1117, the trial court could impose imprisonment "for any term of years or for life." 840 F.2d at 517. The reviewing court concluded, however, that when juxtaposed with other sentencing statutes, that "plain" language lost its clarity. *Id.* Another statute provided for parole eligibility after one-third of the sentence had been served, "or after serving ten years of a life sentence or of a sentence over thirty years." When the sentence term provision and the parole eligibility provision were juxtaposed, the court concluded that the phrase "any term of years" did not unambiguously mean any amount of years less than the age of the universe. Rather, the court interpreted that phrase to mean a span of years less than the defendant's life. *Id.* at 517–18.

¶ 20.   In *United States v. Martin*, 63 F.3d 1422, 1434 (7th Cir. 1995), the court held that where a statutory scheme expressly deprives a court of the possibility of imposing a life sentence, it is an abuse of discretion for the court to impose a life sentence by sentencing the defendant to a term of years that exceeds his or her life expectancy.

¶ 21.   Neither federal case cited by Setagord persuades us that Wis. Stat. § 973.041(1)(b) is not clear on its face, nor that it must be read to be limited to a term of years less than the convicted felon's life expectancy. The statute in *Fountain* openly contained a maximum, i.e., "any term of years or life." As we concluded above, in enacting Wis. Stat. § 973.014(1)(b), our legislature included only a minimum, and not a maximum restriction on the sentencing court's parole eligibility

determination. In effect, the range of sentences permitted under this statute is open-ended.

¶ 22.   Neither the facts nor the law in *Martin* are analogous to the cases before us. In *Martin*, the statute expressly precluded the court from imposing a life sentence. An indirect route to the same result was therefore improper. Here, however, the legislature has not expressly precluded courts from imposing an effective life sentence on persons such as Setagord and Downing.

¶ 23.   The intent of the Wisconsin legislature expressed in this statute thus stands in contrast to Congress' express intent underlying the federal statute at issue in *Martin*. By enacting Wis. Stat. § 973.014(1)(b), our legislature did not expressly deprive sentencing courts of the authority to impose a parole eligibility date that exceeds the person's life expectancy. Instead, the legislature provided that "the court shall make a parole eligibility determination." In making that determination, the sentencing court has two options. The first is to set a parole eligibility date in accordance with Wis. Stat. § 304.06(1). The second option is to set any later date than the date authorized by Wis. Stat. § 304.06(1). It is clear from the face of the statute that the legislature established a floor, and not a ceiling, to the court's authority to make a parole eligibility determination.

¶ 24.   Setagord next makes an argument interpreting the term "any" in the context of the other language in Wis. Stat. § 973.014. Relying upon *Sutherland on Statutes and Statutory Construction*,[7] Setagord contends that "any" may have a diversity of meanings, and consequently "its meaning in a given

---

[7] 2A Norman J. Singer, *Sutherland on Statutes and Statutory Construction*, § 46.07, p. 153 (5th ed., 1992 revision).

statute depends upon the context and the subject matter of the statute." The State turns the context argument around, asserting that the context of the statute here makes clear that no temporal limitations are imposed on the parole eligibility date. We essentially agree with the State. The subject matter of the statute is the court's authority to make a parole eligibility determination for persons sentenced to life imprisonment. In the context of this statute, the phrase, "any later date," is a temporal restriction on the determination of the parole eligibility portion of the sentence. One temporal restriction on that determination, the minimum eligibility date, has already been set by the legislature. The legislature did not set a maximum eligibility date, leaving that to the sentencing court's discretion.

¶ 25. In a decision issued after these cases were argued, we considered another statutory use of the term "any." *State v. Sweat*, 208 Wis. 2d 409, 561 N.W.2d 695 (1997). In that case we analyzed language in the restitution statute, Wis. Stat. § 973.20, which provides that "any defense available in a civil action" may be used to bar individual crime victims' claims for restitution. *Id.* at 413. We said that the term "any" on its own is unequivocal, but observed that the term "any defense" as used in that statute was not defined. *Id.* at 417. Moreover, because the language of the statute was ambiguous when viewed in light of the statute as a whole, we examined the scope history, context, subject matter, and purpose of the statute. When we view the term "any later date" in light of the statute as a whole, *no clouds of ambiguity appear.* The statute as a whole contains only one temporal restriction. The statute as a whole does not impose an outside limitation on the phrase "any later date."

412

¶ 26. We next consider petitioner Downing's arguments. He reads the statute to require that a defendant have an opportunity for conditional release, or parole eligibility, during his or her lifetime. Downing contends that "any later date" must be viewed in the context of another phrase in that same provision, "[t]he person is eligible for parole." Downing asserts that a plain reading of the statute commands that a realistic opportunity for parole be maintained in the setting of a parole eligibility date. Downing's plain reading would effectively graft the phrase, "within the person's expected lifetime," onto the statute. Undeniably, the legislature could have added that phrase. It did not.

¶ 27. Downing additionally suggests that there is a violation of the separation of powers doctrine if we engage in this plain reading of the statute and allow the sentences here to stand. We disagree.

¶ 28. A person convicted of a crime has no legal or constitutional right to parole. *Borrell*, 167 Wis. 2d at 764. Simply because the legislature has provided the possibility of parole creates "no more than a mere hope that the benefit will be obtained." *Id.* at 771–72 (citations omitted). Thus, parole is a statutory privilege, and not a constitutional right. In *Borrell* we concluded that "the court's authority under sec. 973.014 to determine the parole eligibility date of a person convicted and sentenced to life imprisonment does not encroach upon or unduly burden the executive branch's authority to grant pardons, commute sentences, or grant parole." 167 Wis. 2d at 770. The Parole Board's power to grant parole release is not initiated until the prisoner reaches his or her parole eligibility date. *Id.* at 770. We satisfied ourselves in *Borrell* that the Parole Board's authority to grant parole release is not circumscribed by § 973.014. *Id.* at 770.

¶ 29. It is true that the *Borrell* court also stated that the court does not have power over the actual release decision. *Id.* But by recognizing that the legislature can deny parole eligibility, the court affirmed that there is no separation of powers violation when a branch other than the executive denies parole eligibility. The Borrell court also pointed out that the parole eligibility determination by the court in no way prevents the governor from granting a pardon or from commuting the sentence. *Id.*

¶ 30. We have previously considered constitutional challenges to this statute, including a separation of powers challenge. *Borrell*, 167 Wis. 2d at 762. We did not engage in statutory construction. Instead, we reviewed the plain language of the statute to first consider whether this provision violated the separation of powers doctrine. 167 Wis. 2d at 766–67. From that plain language, we discerned a legislative intent to allow the sentencing court to use its discretion in setting a parole eligibility date later than the statutory minimum where the circumstances warrant. *Id.* at 767. We concluded that the legislature acted in such a manner because it realized that the sentencing court is in a better position to assess the particular facts and circumstances of each case and of each defendant. *Id.* We invoke *Borrell*'s analysis here, and hold that a plain reading of Wis. Stat. § 973.014(1)(b) to include authority to impose a parole eligibility date beyond a defendant's expected lifetime does not violate the separation of powers doctrine.

¶ 31. Finally, both Setagord and Downing contend that if we find the statute ambiguous, and Setagord urges that we must, we should observe the Rule of Lenity and construe the statute in their favor. The Rule of Lenity only comes into play after two condi-

414

tions are met. First, we must determine that the penal statute is ambiguous. Second, we must be unable to clarify the intent of the legislature by resort to legislative history. *See State v. Morris*, 108 Wis. 2d 282, 289, 322 N.W.2d 264 (1982); *State v. Wilson*, 77 Wis. 2d 15, 28, 252 N.W.2d 64 (1977). Because we conclude that Wis. Stat. § 973.014(1)(b) is plain and unambiguous on its face, the Rule of Lenity does not apply here.[8]

¶ 32.  We recognize that the court of appeals in *Setagord II* determined that the statute was ambiguous. While we have due respect for the court of appeals' analysis, a division of judicial authority over the proper construction of a statute does not, *ipso facto*, render it ambiguous. *Reno v. Koray*, 115 S. Ct. 2021, 2029 (1995) (ruling that Bail Reform Act of 1984 is not ambiguous for purposes of lenity merely because circuit courts split over its construction).

EXERCISE OF DISCRETION IN SENTENCING

¶ 33.  Because we conclude that Wis. Stat. § 973.014(1)(b) permits the circuit court to set a parole eligibility date beyond the person's expected lifetime,

---

[8] Nor do we consider extrinsic aids under a plain language interpretation. Nonetheless, we note that our interpretation of Wis. Stat. § 973.014(1)(b) is shared by authors Walter Dickey, David Schultz, and James L. Fullin, Jr. in their article, *The Importance of Clarity in the Law of Homicide: The Wisconsin Revision*, 1989 Wis. L. Rev. 1323. Referring to 1987 Wisconsin Act 412 which created Wis. Stat. § 973.014, the authors concluded that "legislation separate from the homicide revision introduced a new sentencing option for all crimes carrying a life sentence: The sentencing judge may set parole eligibility at any period of time in excess of the regular eligibility term, as a practical matter, giving the judge the power to deny parole eligibility altogether." *Id.* at 1334.

we consider the second question raised: Did the sentencing court erroneously exercise its discretion by setting parole eligibility dates for Setagord and Downing 100 years or more after the date of their crimes?

¶ 34. The primary factors a court considers in fashioning a sentence are the gravity and nature of the offense, including the effect on the victim, the character of the offender, including his or her rehabilitative needs and the interests of deterrence, and the need to protect the public. *State v. Carter*, 208 Wis. 2d 142, 156, 560 N.W.2d 256 (1997). *See also State v. Sarabia*, 118 Wis. 2d 655, 673–74, 348 N.W.2d 527 (1984).[9] The sentence imposed should represent the minimum amount of custody consistent with those factors. *Borrell*, 167 Wis. 2d at 764.

¶ 35. The factors that a sentencing court considers when imposing a sentence are the same factors that influence the determination of parole eligibility. *Borrell*, 167 Wis. 2d at 774. Parole eligibility date determinations are reviewable under the same standard as are other sentencing decisions. 167 Wis. 2d at 778. Thus, we limit our review to determining whether there has been an erroneous exercise of discretion. *McCleary v. State*, 49 Wis. 2d 263, 278, 182 N.W.2d 512 (1971); *State v. Iglesias*, 185 Wis. 2d 117, 517 N.W.2d 175, *cert. denied*, 513 U.S. 1045 (1994).

[9] Other relevant factors include the defendant's age, personality, social traits, remorse, repentance, cooperativeness, educational level, employment background, degree of culpability, and demeanor at trial. *State v. Killory*, 73 Wis. 2d 400, 408, 243 N.W.2d 475 (1976).

¶ 36. The court of appeals, applying the correct standard, conducted a thorough examination of the sentencing factors articulated by the circuit court and applied to the facts of Setagord's crime. Slip op. at 15. The court of appeals upheld the circuit court's exercise of discretion in setting Setagord's parole eligibility date. We adopt the analysis and conclusion of the court of appeals that the circuit court did not erroneously exercise its discretion when it resentenced Setagord to life imprisonment, with a parole eligibility date of October 21, 2091.[10]

¶ 37. We next turn to Mr. Downing. Without benefit of intermediate review, we consider his assertion that the resentencing court erroneously exercised its discretion.

---

[10] We note, however, that as part of its review, the court of appeals relied on *State v. Solles*, 169 Wis. 2d 566, 569, 485 N.W.2d 457 (Ct. App. 1992), for the limitation that "when resentencing a defendant the trial court must consider only the circumstances existing when defendant was first sentenced." Earlier this term we overruled *Solles. State v. Carter*, 208 Wis. 2d 142, 560 N.W.2d 256 (1997). We held in *Carter* that a circuit court should, when imposing sentence at a resentencing hearing, consider all relevant information about the defendant, including information about events and circumstances either that the sentencing court was unaware of at the initial sentencing or that occurred after the initial sentencing. 208 Wis. 2d at 158.

Based on our review of the resentencing hearing transcript, we conclude that the circuit court met the requirements of *Carter*, and that the court considered all the relevant information about Setagord's conduct that occurred after the initial sentencing.

¶ 38. We generally afford sentencing decisions a strong presumption of reasonableness because the circuit court is best suited to consider the relevant factors and assess the defendant's demeanor. *Borrell*, 167 Wis. 2d at 781–82. Thus, the defendant has the burden to show that the sentence was unreasonable or unjustified. *Id.* We will find an erroneous exercise of discretion when a sentence is so excessive and unusual, and so disproportionate to the offense committed, as to shock public sentiment and violate the judgment of reasonable persons concerning what is right and proper under the circumstances. *Sarabia*, 118 Wis. 2d at 673. Finally, when the legislature has granted the sentencing court the authority to impose sentences within a certain range, the legislature has given the court discretion to determine where in that range a sentence should fall. *State v. Harris*, 119 Wis. 2d 612, 624, 350 N.W.2d 633 (1984).

¶ 39. Downing asserts that "the trial court continued to pile on incarceration time after it conceded that Downing cannot possible live to serve the excessive time." Petitioner's Brief at 31. Downing thus argues that the length of imprisonment imposed for the hostage-taking charge signals a disregard for the relevant sentencing factors. We disagree, and conclude that the court here properly considered and articulated the relevant factors when it resentenced Downing. The sentence imposed is not so unusual, or disproportionate, as to shock public sentiment.

¶ 40. At the resentencing hearing, the State asked the court to impose a sentence of life imprisonment, consecutive to the total 129 years imposed earlier for other charges. The State also specifically

418

requested a parole eligibility date of October 21, 2177. The State calculated Downing's mandatory release date on the prior sentences—after 86 years—and then added 100 years from that point.

¶ 41. Next, defense counsel reviewed with the court the pre-sentence investigation report, and the defendant's own statements as to the events on the day of the hostage-taking. Defense counsel also offered two letters from the Department of Corrections and two inmate performance evaluations. All four of these documents were generated in the interim between Mr. Downing's original sentencing and the November, 1995, resentencing hearing.

¶ 42. After receiving those documents, and the comments of counsel, the court revisited the events of the crime. The court adopted its comments made at the original sentencing.[11]

---

[11] At the original sentencing, the court considered, among other things, the "lengthy and extremely thorough" pre-sentence report. In considering the gravity of the offense, the court noted that Downing participated in the hostage-taking as part of a planned escape from jail at a time when he was going through a trial on very serious charges. The court also considered that the crime of hostage taking was "at the peak" of seriousness.

At the original sentencing, the court also considered Downing's character, outlining a long and serious criminal history. The court found Downing to be one of the most antisocial persons he had encountered, and that he demonstrated no likelihood to change his behavior for the better.

The court also considered Downing's character in light of the need to protect the public. The court concluded that Downing was a man "who doesn't care about hurting people. He will do it at will whenever, for whatever purpose, to whomever if they are in his way."

¶ 43. The court then weighed the gravity of the hostage-taking offense, its seriousness in part reflected by the statutory sentencing option of life imprisonment.

¶ 44. The court made further comments on Mr. Downing's character, finding that he demonstrated no remorse, and posed a continuing risk to society. Considering the Department of Corrections letters and positive evaluations, the court concluded that Downing could only perform at that level within a locked facility. Referring to factors considered at both hearings, the court then stated, "I knew of almost no redeeming values. I know of very few now. I know of nothing that would cause me to stray from my earlier views about your character."

¶ 45. Finally, weighing the public protection factor, the court described the terror that Downing brought to the community, the state, and employees of the jail building during the hostage-taking. In light of all those considerations, the court followed the State's sentence recommendation.

¶ 46. The record, as summarized above, demonstrates that the judge here considered the comments of both counsel and the facts of the specific crime. The judge applied each of the pertinent sentencing factors, and explained the reasons for its parole eligibility determination. Based on all of the factors considered and articulated by the sentencing court, we disagree with Downing's contention that the sentence imposed could not have been directed at any of the relevant sentencing factors.

¶ 47. This is true despite the judge's remarks that "It sounds silly. It sounds far-fetched, that you have already been handed 129 consecutive years by other courts, that indeed I would add another 100, but

that is what I am going to do." Those remarks followed the court's recitation of the factors set out above, as well as a consideration of remarks by counsel. The fact that Downing already was serving a lengthy sentence for prior offenses did not automatically make the parole eligibility determination here unreasonable or unjustified. If we take Downing's argument that a parole eligibility date must be within a defendant's expected lifetime to its logical conclusion, sentencing courts would have to impose diminishing sentences for a defendant's subsequent offenses, in order to preserve an "attainable parole date". *See* Petitioner Downing's Brief at 18. Offenders who commit multiple crimes should not receive a sentencing "discount" due to the sheer volume of their crimes. *See also* Wis. Stat. § 973.15(2)(a).[12] Making an attainable parole date the primary gauge of the reasonableness of a sentence disregards traditional sentencing factors.

¶ 48. The court clearly considered that Downing showed little or no chance of rehabilitation, based on his prior criminal record and his efforts to avoid one trial and sentencing by taking a jail deputy hostage in an escape attempt. Even Downing's counsel admitted that Downing's only relevant work history occurred while he was an inmate.

¶ 49. It is important to note that the reason for Downing's resentencing was not that the court improperly weighed sentencing factors in the first instance. Thus, it was reasonable for the court on resentencing to adopt its prior comments, particularly those concern-

---

[12] Wis. Stat. § 973.15(2)(a) (1993–94) provides:

Except as provided in par. (b), the court may impose as many sentences as there are convictions and may provide that any such sentence be concurrent with or consecutive to any other sentence imposed at the same time or previously.

ing Downing's ruthless attempt to leave the county jail at almost any cost. The court was not unreasonable in focusing on the terror instilled in the community at large, as well among corrections workers, at the prospect of inmates holding deputies hostage under the threat of death. These findings led the court, on resentencing, to heavily weigh the public protection and deterrence factors. Imposition of a sentence with a parole eligibility date of October 21, 2177, is not so excessive as to shock public sentiment.

¶ 50.  Based on the plain language of the statute, we hold that Wis. Stat. § 973.014(1)(b) unambiguously allows the circuit court to impose a parole eligibility date beyond a defendant's expected lifetime, and that the specific parole eligibility dates set for petitioners Setagord and Downing do not constitute erroneous exercises of discretion by the circuit court.

*By the Court.*—The decision of the court of appeals is affirmed as to Setagord, and the order of the circuit court is affirmed as to Downing.

¶ 51.  WILLIAM A. BABLITCH, J. (*dissenting*). On August 28, 1992, John Setagord was sentenced to life in prison without parole. Setagord appealed, and the court of appeals concluded that Wis. Stat. § 973.014 (1991–92)[1] clearly and unambiguously did not permit the circuit court to impose a sentence of life in prison without the possibility of parole for Setagord's crime. *State v. Setagord*, 187 Wis. 2d 340, 523 N.W.2d 124 (Ct. App. 1994). Accordingly, the court of appeals reversed the sentence and remanded for resentencing. Upon remand, the circuit court sentenced Setagord to life in

---

[1] Unless otherwise indicated, future statutory references are to the 1991–92 volume.

prison with a parole eligibility date of October 21, 2091—in effect, a sentence of life in prison without the possibility of parole. By affirming this sentence, the majority elevates form over substance.[2] It tells the circuit courts that, if you don't use the words "without possibility of parole," even though that is the effect, we will approve.

¶ 52.    In essence, the majority concludes the legislature deliberately intended to create a classic, albeit cynical, "good news, bad news" situation for the defendant when it drafted the mandate "the court shall make a parole eligibility determination . . ." Wis. Stat. § 973.014. The good news for the defendant: you're eligible for parole. The bad news: it won't be during your lifetime. I conclude the legislature did not intend Wis. Stat. § 973.014 to be used by the sentencing judge in this manner. Accordingly, I dissent.

¶ 53.    When interpreting this statute, one overarching principle must guide the court's analysis—the legislature sets sentencing policy. It is well settled that "the court's sentencing power is derived solely from the statutes and. . .the courts must adhere to statutory limits when fashioning sentences." *State v. Sepulveda*, 119 Wis. 2d 546, 553, 350 N.W.2d 96 (1984) (footnote omitted). In other words, the sentencing court can only impose a sentence if that sentence is authorized by the legislature. By imposing a sentence not authorized by

---

[2] Frequently the wisest analysis can be found in the simple adage. " 'If something walks like a duck, quacks like a duck and swims, covering it with chicken feathers will not make it into a chicken.' " *Boyd v. Layher*, 427 N.W.2d 593, 596 (Mich. App. 1988) (citation omitted). Likewise, Setagord's sentence is a sentence of life in prison without parole; calling it a term of years sentence with a parole eligibility date far beyond life expectancy cannot alter that simple fact.

the statute, the circuit court usurps the legislature's authority to set sentencing policy.

¶ 54. The majority concludes that by its use of the phrase "any later date" in Wis. Stat. § 973.014, the legislature unambiguously granted the circuit court discretion to impose a parole eligibility date far beyond even Methuselah's life expectancy. Apparently, even a parole eligibility date of 4001 or any other year would meet with the consent of the majority. The majority reaches this conclusion by ignoring a basic rule of statutory construction: A phrase must be defined within the context of the statute in which it is used. *Pulsfus Farms v. Town of Leeds*, 149 Wis. 2d 797, 804, 440 N.W.2d 329 (1989).

¶ 55. Ignoring this rule, the majority analyzes only one part of Wis. Stat. § 973.014:

> *the court* shall make a parole eligibility determination. . .(b). . .Under this subsection, the court may set *any later date* than that provided in s. 304.06(1).

Majority opinion at 407. However, at the time of Setagord's sentencing, § 973.014, provided:

> **(1)** Except as provided in sub. (2), when a court sentences a person to life imprisonment for a crime committed on or after July 1, 1988, *the court shall make a parole eligibility determination* regarding the person and choose one of the following options:
>
> (a) The person is eligible for parole under s. 304.06(1).
>
> (b) The person is eligible for parole on a date set by the court. *Under this paragraph, the court may set any later date than that provided in s. 304.06(1)*, but may not set a date that occurs before

the earliest possible parole eligibility date as calculated under s. 304.06(1).[3] (Emphasis added.)

¶ 56. By analyzing just the underlined portion of the statute, without benefit of the context of the entire statute, the majority reaches an erroneous conclusion.

¶ 57. This court recently visited a similar problem of statutory interpretation. In *State v. Sweat*, 208 Wis. 2d 409, 561 N.W.2d 695 (1997), we interpreted the phrase "any defense available in a civil action" as used in Wis. Stat. § 973.20(14)(b). In that case, we held that "any" when modifying "defense," though unambiguous when standing alone, was ambiguous when read in conjunction with the statute as a whole. *Sweat*, 208 Wis. 2d 409. *See also* 2A Norman J. Singer, *Sutherland's Statutory Construction* § 46.07, p. 153 (5th ed., 1992) (the word "any" has "a diversity of meanings. . .and its meaning in a given statute depends upon the context and the subject matter of the statute") (footnote omitted).

¶ 58. A statutory provision is ambiguous if reasonable minds could differ as to its meaning. *Sweat*, 208 Wis. 2d at 416. Here, the court concludes that "any" when modifying "later date" is unambiguous. And it is—when standing alone. However, when read in conjunction with other provisions in Wis. Stat. § 973.014, the phrase "any later date" is ambiguous.

¶ 59. One reasonable interpretation of the statute is that rendered by the majority that, essentially, "any later date" means "any later date from here to eternity." Another reasonable interpretation—and an

---

[3] Wis. Stat. § 973.014 was renumbered by 1993 Wis. Act 289, § 11–12. As did the court of appeals, and as does the majority, I refer to the provisions of § 973.014 by the current numbering.

interpretation more in harmony with Wis. Stat. § 973.014 as a whole—is that the phrase "any later date" means "any later date, but not life imprisonment without parole because the statute states that the person is eligible for parole on a date set by the court" or "any later date within the average person's life expectancy." Because these interpretations can reasonably be drawn, the reasonable conclusion is that § 973.014 is ambiguous.

¶ 60. When a statute is ambiguous, several rules of statutory construction come into play. In construing Wis. Stat. § 973.014, these rules of construction indicate that the phrase "any later date" is more reasonably interpreted as "any later date within the average person's life expectancy."

¶ 61. First, it is well-established that ambiguous, penal statutes such as Wis. Stat. § 973.014 should be interpreted to the defendant's benefit. In construing federal statutes, the federal courts apply the rule of lenity. *Bell v. United States*, 349 U.S. 81, 83. This court applies a similar concept, stating that "penal statues are generally construed strictly to safeguard defendant's rights." *State v. Bohacheff*, 114 Wis. 2d 402, 417, 338 N.W.2d 466 (1983) (citation omitted). Thus, as Setagord argues, criminal penalties must be narrowly construed and any ambiguities in a penal statute—including sentencing provisions—must be resolved in favor of the defendant. *See Strong v. C.I.R., Inc.*, 184 Wis. 2d 619, 628, 516 N.W.2d 719 (1994). *State v. Christensen*, 110 Wis. 2d 538, 546, 329 N.W.2d 382 (1983). *See also State v. Morris*, 108 Wis. 2d 282, 289, 322 N.W.2d 264 (1982) ("in case of doubt concerning the severity of the penalty prescribed by the statute, the court will favor a milder penalty over a harsher one.. . .'Since it is within the power of the

lawmakers, the burden lies with them to relieve the situation of all doubts.' ") (citation omitted)); 3 *Sutherland's Statutory Construction* § 59.03 at 103 (" 'It is a well-established principle of statutory construction that. . .the more severe the penalty, and the more disastrous the consequence to the person subjected to the provisions of the statute, the more rigid will be the construction of its provisions in favor of such person and against the enforcement of such law.' ") (footnote omitted).

¶ 62.    In sum, the burden lies with the legislature to enact a statute that clearly and unambiguously provides for the most severe criminal punishment available in Wisconsin—a sentence of life in prison without even the possibility of parole, and this statute does not clearly establish such an intent by the legislature.

¶ 63.    Another fundamental rule of statutory construction supports this conclusion. Statutes are to be construed to avoid rendering any part of the statute meaningless or superfluous. *State v. Achterberg*, 201 Wis. 2d 291, 299, 548 N.W.2d 515 (1996). That the majority's interpretation violates this principle is most glaringly illustrated by the interplay of Wis. Stat. §§ 973.014(1)(b) and (2) (1993–94):[4] If "any later date" in subsection (1)(b) authorized the imposition of a life sentence with a parole eligibility date far beyond life expectancy, i.e., life in prison without the possibility of parole, why would the legislature have added subsection (2) which specifically authorizes a life sentence

---

[4] 1993 Wisconsin Act 289 amended Wis. Stat. § 973.014, renumbering the statute and adding the following provision:

(2)    when a court sentences a person to life imprisonment under s. 939.62(2m), the court shall provide that the sentence is without possibility of parole.

without parole? Simply put, if the majority's interpretation of subsection (b) is correct, subsection (2) is unnecessary. It is superfluous and meaningless—a result that must be avoided.

¶ 64.  A related canon of construction supports the conclusion that "any later date" does not give the circuit court the authority to impose a life sentence without parole: "Where the legislature uses two different phrases. . .in two paragraphs in the same section, it is presumed to have intended the two phrases to have different meanings." *Armes v. Kenosha County*, 81 Wis. 2d 309, 318, 260 N.W.2d 515 (1977) (footnote omitted). *See also Weber v. Town of Saukville*, 209 Wis. 2d 214, 231, 562 N.W.2d 412 (1997). Since the legislature has used language in Wis. Stat. § 973.014(1)(c) (1995–96) and Wis. Stat. § 973.014(2) (1993–94) expressly authorizing life without parole sentences, its omission of such language in Wis. Stat. § 973.014(1)(b) ought to be given substantive, meaningful effect. The majority's reading strips the different statutory wordings of any real difference.

¶ 65.  This is exactly the point of a recent decision by the Seventh Circuit in an analogous situation. The federal statutes involved in *United States v. Martin*, 63 F.3d 1422 (7th Cir. 1995), provided that a person guilty of arson, in which death resulted, "shall" be subject to "imprisonment for any term of years, or to the death penalty, or to life imprisonment as provided in § 34 of this title." *Id.* at 1432. Section 34 provided that a person shall be subject to the "death penalty or to imprisonment for life, if the jury shall in its discretion so direct." *Id.*

¶ 66.  Although the jury had not directed that Martin be sentenced to life in prison, the trial court imposed a term of years far beyond his life expectancy.

The Seventh Circuit vacated and remanded for resentencing, holding that where a legislatively enacted sentencing scheme has expressly deprived a court of the possibility of imposing a life sentence, a sentence for a term of years exceeding the defendant's approximate life expectancy would ordinarily constitute an abuse of discretion. Judge Flaum explained, "If we are to give [the statute] real meaning, a sentencer cannot be permitted to evade the restrictions on one kind of sentence by imposing a substantially identical one with a slightly different name." *Martin*, 63 F.3d at 1434. *See also United States v. Prevatte*, 66 F.3d 840, 843–44 (7th Cir. 1995) (Posner, C.J., concurring) (where sentencing judge was "disempowered" from imposing life, "if he used a term of years to impose a life sentence he was evading a limitation on his authority.").

¶ 67.  Legislative history can also be indicative of legislative intent. However, as the defendant argues, the legislative history of this statute raises more questions than it answers.

¶ 68.  The original version of Wis. Stat. § 973.014 was enacted by 1987 Wisconsin Act 412. That Act was first introduced as Assembly Bill 8 (November 1987 Special Session). As enacted by the Assembly, the bill originally provided that anyone convicted of a crime punishable by life imprisonment could be sentenced to life "without parole eligibility"—precisely the sentence imposed in this case. The Senate then enacted a much narrower version, which simply provided that a circuit court could defer the date of parole eligibility in cases where the defendant was convicted of first-degree murder while committing or attempting certain violent felonies, including hostage taking. *See* § 5 of Senate Substitute Amendment 1 to Assembly Bill 8.

¶ 69. The measure then moved back to the Assembly, where it was further amended by a provision that ultimately became the basis for the present Wis. Stat. § 973.014. *See* § 5 of Assembly Amendment 1 to Senate Substitute Amendment 1 to Assembly Bill 8. That version would have provided the circuit court with three sentencing options:

973.014 SENTENCE OF LIFE IMPRISON-MENT; PAROLE ELIGIBILITY DETERMINATION. *When a court sentences a person to life imprisonment for a crime committed on or after the effective date of this section. . .[revisor inserts date], the court shall make a parole eligibility determination regarding the person and choose one of the following options:*

(1) The person is not eligible for parole.

(2) The person is eligible for parole under s. 57.06(1).

(3) The person is eligible for parole on a date set by the court. The court may not set a date that occurs before the earliest possible parole eligibility date as calculated under s. 57.06(1).

(Emphasis added.) Thus, this version would have expressly authorized the sentence imposed in this case—life without possibility of parole. But, the legislature's Committee of Conference recommended that this option be struck; Wis. Stat. § 973.014 was thereafter adopted with only two parole options rather than with the third option of life without parole.

¶ 70. Since the legislature struck a provision that would have expressly authorized precisely the sentence that was imposed here (life without parole), the remainder of the statute as enacted should not be construed as authorizing such a sentence. The legislature's action "strongly militates against a [judicial]

judgment that [the legislature] intended a result that it expressly declined to enact." *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 200 (1974). "Where [a legislature] includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended." *Russello v. United States*, 464 U.S. 16, 23–24 (1983).

¶ 71.   The State argues that a May 23, 1988 one-page memo to "File" prepared by Bruce Feustel, an attorney with the Legislative Reference Bureau, and a one-page "Drafting Request" from the "Conference" that was apparently received by Mr. Fuestel on May 24 provide a clear indication of legislative intent. The Feustel memo summarized the three parole options contained in the amended Assembly version of A.B. 8 before it went to the Committee of Conference, and opined that there was "no limit" on how long parole eligibility could be deferred by a circuit court; it "could be a date 100 years in the future."

¶ 72.   I disagree with the State's interpretation. The Feustel memo is simply too slim a reed to support the conclusion that the legislature definitely intended to grant implicit authority to circuit courts to impose indirect life without parole sentences on the basis of ambiguous statutory language.

¶ 73.   Finally, the court must recognize that the legislature knows how to create an unambiguous statute. In his brief, Setagord sets forth several examples of legislative drafting that exhibit an unambiguous legislative intent to allow the circuit court to impose a life sentence without parole, demonstrating that when the legislature intends to authorize such punishment it does so directly through plain and unambiguous language.

431

¶ 74. In the first example, Wis. Stat. § 973.014(2) (1993–94) expressly provides that "persistent repeaters" are subject to life imprisonment "without the possibility of parole." Setagord is not a persistent repeater. Yet he has been sentenced as if he were.

¶ 75. Second, Wis. Stat. § 973.014(1)(c) (1995–96) expressly gives the circuit court the power to declare that any defendant sentenced to life imprisonment "is not eligible for parole," but "only if the court sentences a person for a crime committed on or after August 31, 1995." Setagord is not subject to this section. Yet he has been sentenced as if he were.

¶ 76. The legislature's direct authorization of life without parole sentences in these situations demonstrates that Wis. Stat. § 973.014(1)(b) (1991–92) does not extend so far as to authorize the imposition of an indirect sentence of life without parole by the setting of a parole eligibility date that no defendant could possibly live to reach. Had the legislature intended to permit such sentences in § 973.014(1)(b), it could and would have used the same language as it used in Wis. Stat. §§ 973.014(2) (1993–94) and the newly enacted Wis. Stat. § 973.014(1)(c) (1995–96).

¶ 77. The legislature amended Wis. Stat. § 973.014(1) during the pendency of this case to add another parole eligibility option: a circuit court now has the power to declare that any defendant sentenced to life imprisonment "is not eligible for parole," but "only if the court sentences a person for a crime committed on or after the effective date" of the amendment, August 31, 1995. *See* 1995 Wis. Act. 48, § 5(to be codified as Wis. Stat. § 973.014(1)(c)). It is conceded that Setagord is not subject to sentencing under this provision because his crime was committed prior to its effective date.

432

¶ 78.  The majority's interpretation fails for yet another reason: since the legislature clearly knows how to authorize life without parole sentences, its command in Wis. Stat. § 973.014 that a sentencing "shall" set a parole eligibility date can only be construed as requiring that the defendant be given a meaningful possibility for parole at some point within an average person's lifetime. To construe a command that a parole eligibility date be set as allowing a circuit court to render a convicted defendant entirely ineligible for parole is inconsistent with the duty to set a date for parole eligibility. It results in making a "charade" out of the whole parole eligibility date determination and exalts form over substance. This violates the fundamental canon that statutes are to be construed to avoid absurd, unreasonable, illogical, and senseless interpretations. *See, e.g., State v. Moore*, 167 Wis. 2d 491, 496, 481 N.W.2d 633 (1992).

¶ 79.  In sum, looking at the phrase "any later date" in isolation, the majority erroneously concludes that Wis. Stat. § 973.014 is unambiguous. However, when that phrase is properly construed in conjunction with other provisions of the statute, more than one reasonable interpretation can be drawn as to its meaning. Accordingly, the statute is ambiguous. Because it is the function of the legislature to establish sentencing policy, and because fundamental rules of statutory construction indicate that the legislature's sentencing policy as established in § 973.014(1)(b) was to allow the circuit court the discretion to set a parole eligibility date that provided a reasonable expectation of parole eligibility, I respectfully dissent.

¶ 80.   I am authorized to state that Chief Justice Shirley S. Abrahamson and Justice Ann Walsh Bradely join this dissenting opinion.